# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA

UNITED STATES OF AMERICA, )
         Plaintiff, )
         )
v. ) **Case No: 4:23-cr-40024**
         )
         )   4:25-cv-4148
AMBER LOUISE JUSTUS, )
        Defendant )
         )

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

\* \* \* \* \* \* \*

**COMES NOW** the Movant, Amber Louise Justus ("Justus"), *pro se*[1], and respectfully offers this Memorandum in Support of her contemporaneously filed Motion to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion").

For the Court's consideration Justus respectfully offers the following:

## I.    INTRODUCTION

The cornerstone of the American system of criminal justice is the Sixth Amendment's constitutionally protected right to the effective assistance of counsel. This fundamental guarantee is not merely a procedural formality; it is the bedrock of our criminal justice system, ensuring that the adversarial process produces a just and reliable result. Despite the importance of this protection, Justus was denied it at the most critical stages of her criminal proceeding.

---

[1] Because Justus is proceeding in this matter without the benefit of counsel, it is respectfully requested that the Court continue to apply a liberal interpretation to the claims and arguments asserted herein. See e.g.: *Erickson v. Pardus, 551 U.S. 89, 94 (2007).*

The above being said, Justus brings this § 2255 Motion because her guilty plea was not knowing, voluntary, and intelligently made. It was the product of her counsel's deficient advice and actions, including coercing Justus into accepting a plea agreement and signing a Factual Basis Statement that she knew to be false. Counsel compounded this error by failing to investigate exculpatory evidence, such as text messages and identified witnesses, and neglecting to challenge the admissibility of Justus's initial confession despite her claims of impairment. Furthermore, counsel provided erroneous advice regarding the proffer process, affirmatively misrepresenting a guaranteed 10-year sentence and later giving incorrect legal guidance that foreclosed a Rule 35 motion for substantial assistance. Compounding these deficiencies, counsel's performance was also constitutionally deficient at sentencing, failing to investigate or present crucial mitigating evidence concerning Justus's diagnosed mental health history. This left Justus vulnerable to highly damaging victim impact testimony, depriving the Court of vital context for a fair sentence.

As will be set forth herein, these were not mere missteps but constitutionally significant failures that had a prejudicial outcome on the case. These deficiencies directly undermined the reliability of Justus's guilty plea and the fairness of her sentencing. For these reasons, the interests of justice demand that Justus's conviction and sentence be set aside.

## II.    BACKGROUND AND PROCEDURAL POSTURE

In the interest of judicial economy, only the facts and procedural history relevant to the claims of errors asserted in Justus's § 2255 Motion are discussed herein.

1)    On March 7, 2023, a federal grand jury for the District of South Dakota returned an indictment charging Justus, among other co-defendants, with Conspiracy to Distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. See: *DE 1.*

2)    Attorney Tierney C. Scoblic ("Scoblic") was appointed pursuant to the Criminal Justice Act. Scoblic would represent Justus during all relevant proceedings in front of this Court. See: *DE 37.*

3)    At Scoblic's urging, Justus attended multiple proffer sessions with the United States. During this first proffer, Justus informed Scoblic that she was under the influence of methamphetamine, yet Scoblic permitted the session to proceed. As a result, the United States later rejected this proffer, believing Justus was lying due to her impaired state. See: *Justus Declaration, Exhibit "A".* Justus was sober during the second proffer, but the damage had already been done because the United States was convinced that she was not truthful during her first proffer. See: *Id.* Nevertheless, to induce her to attend and cooperate, Scoblic affirmatively "assured" Justus that she would receive a 10-year sentence if this second proffer was accepted. This promise, however, was an affirmative misrepresentation about a guaranteed sentencing outcome, which never materialized. See: *Id.*

4) Despite her successful second proffer, Scoblic later provided Justus with incorrect legal advice, asserting that a Rule 35 motion for a sentence reduction based on substantial assistance was "not possible" because Justus had allegedly lied during her first, impaired proffer. This erroneous advice deprived Justus of a potential benefit of her cooperation. See: *Id.*

5) On May 15, 2024, Justus signed a Plea Agreement and a Factual Basis Statement. See: *DE 204*; See Also: *DE 205*. The Plea Agreement contained a waiver of appellate and collateral attack rights, but it expressly preserved the right to bring a claim of constitutionally ineffective assistance of counsel. See: *DE 204, at 8, ¶ P.*

6) Prior to signing the Plea Agreement and Factual Basis Statement, Justus specifically informed Scoblic that text messages on her phone and an identified witness could disprove the Factual Basis Statement. Scoblic did download the phone's contents but dismissed this exculpatory evidence as "irrelevant," stating "it doesn't matter where you got the drugs from." See: *Justus Declaration, Exhibit "A"*[2].

7) On May 21, 2024, Justus appeared before Magistrate Judge Duffy for a Change of Plea hearing. See: *DE 210*; See Also: *DE 249*. During the Rule 11 colloquy, Justus testified under oath that her plea was free and voluntary and not the result of threats or coercion. She disclosed she was taking Buspar and Trazodone for anxiety

---

[2] Justus intends to file a separate motion for limited discovery, pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, seeking to obtain Justus's cell phone from the Department of Homeland Security. Justus avers that this phone contains text messages and recorded conversations with Scoblic that directly support her claims of ineffective assistance of counsel. While there is no guarantee the Court will grant such a motion, given the centrality of these factual contentions to the *Strickland* claims, Movant believes the chances of obtaining this evidence are significant, provided the phone has not been destroyed.

but affirmed these medications did not impair her ability to understand the proceedings. See: *DE 249*, at 4. The Court reviewed the rights she was waiving and specifically questioned her regarding the appeal waiver, which she confirmed understanding. See: *DE 249, at 8-15*. The Court also advised that any sentencing estimate was not binding and she could not withdraw her plea if the ultimate sentence was different than anticipated. See: *DE 249, at 17-19*.

8)     Notwithstanding her responses during the plea colloquy, Justus signed the Plea Agreement and Factual Basis Statement under the belief that she had no viable alternative. Scoblic actively pressured Justus into accepting the plea, advising her that she *"would not stand a chance in trial"* and that accepting the plea was her *"only real option."* Furthermore, Justus states that the Factual Basis Statement contained facts she knew to be inaccurate. Based on Scoblic's consistent pressure, coupled with counsel's prior failures to adequately investigate exculpatory evidence, to pursue a motion to suppress her impaired confession, and to provide accurate guidance regarding the proffer process and potential sentence reduction, Justus believed she had no other viable course of action but to plead guilty. See: *Justus Declaration, Exhibit "A".*

9)     Had Justus been properly counseled regarding the elements of the offense, the weaknesses in the United States' case, her right to suppress her confession, the actual sentencing exposure she faced, the true nature of the proffer benefits, and the existence of exculpatory evidence, Justus would not have accepted

the plea agreement as written and would have insisted on proceeding to trial. See: *Id.*

10) Prior to sentencing, the relationship between Justus and Scoblic had deteriorated significantly. This prompted Justus to file a motion to remove Scoblic as her counsel, informing the Court that she felt pressured by Scoblic and that Scoblic was not working in her best interest. Justus believes that Scoblic was very upset at her for filing this motion and from that point forward was rude and short with her, creating a conflict of interest where Justus felt Scoblic was working against her. The Court, however, denied Justus's motion to remove counsel. See: *Id.*

11) In advance of sentencing, Justus informed Scoblic about two prior inpatient stays at Avera Behavioral Health and ongoing treatment from a doctor and counselor at Sanford Medical, but Scoblic failed to obtain or present these crucial mental health records at sentencing. See: *Id.* This failure by Scoblic to investigate and present available mitigating evidence rendered counsel ill-prepared at sentencing. Scoblic was unable to effectively counter the highly damaging victim impact testimony provided by Justus's eldest daughter, Liberty Justus, who described a lifetime of neglect and trauma and stated that her mother's children would have more "peace" with her in prison for a longer duration. See: *DE 250, at 8-10.* This testimony significantly undercut any potential mitigation argument, a situation Scoblic was unprepared to address due to the lack of a robust mental health presentation.

12) On July 29, 2024, the Court held the sentencing hearing. See: *DE 242*; See Also: *DE 250*. The Court adopted the Presentence Report's calculation of a Total Offense Level of 31 and a Criminal History Category of V, resulting in an advisory guideline range of 168 to 210 months. See: DE *250, at 2*. Thereafter the Court sentenced Justus to 168 months. In doing so, the Court explicitly rejected the defense's "growth and accountability" argument. The sole reason given for the bottom-of-the-range sentence was that Justus was "just barely into Criminal History Category V." See: *DE 250, at 6, 19*.

13) Judgment was entered on July 30, 2024. See: *DE 243*. Justus filed a Notice of Appeal on August 8, 2024. See: *DE 244*. The Eighth Circuit Court of Appeals granted the United States' motion to dismiss the appeal on October 30, 2024. See: *DE 262*. The mandate was issued on December 18, 2024, finalizing the judgment. See: *DE 266*.

## III.  LEGAL ARGUMENT

### A.  Standard of Review

The writ of habeas corpus has long served as the primary means for individuals to challenge unlawful detention. See: <u>Boumediene v. Bush</u>, *553 U.S. 723, 739 (2008)*. For federal prisoners, this constitutionally mandated remedy is now principally embodied in 28 U.S.C. § 2255[3], which Congress enacted as a statutory substitute for the traditional writ. This statute was designed to address the practical difficulties that arose when prisoners filed habeas petitions in jurisdictions far from their

---

[3] The § 2255 statute was enacted as part of the Judiciary Act of 1948 and is found at Ch. 646, 62 Stat 967.

sentencing courts, as § 2255 proceedings ensure that courts familiar with the case and record can evaluate the validity of the conviction and sentence. See: *United States v. Hayman*, *342 U.S. 205, 210-19 (1952)*; See Also: *United States v. Addonizio*, *442 U.S. 178, 185 (1979)*. Thus, a § 2255 motion must be filed in the district where the defendant was sentenced. See: *Jeffers v. Chandler*, *253 F.3d 827, 831 (5th Cir. 2001)*. Statutorily, a federal inmate may seek relief under § 2255 on four specific grounds:

> 1) The sentence was imposed in violation of the United States Constitution or federal law; 2) The court lacked jurisdiction to impose such a sentence; 3) The sentence exceeded the maximum authorized by law; or 4) The sentence is otherwise subject to collateral attack. See: *28 U.S.C. § 2255(a)*.

The relief authorized under the § 2255 statute is narrowly tailored because of the strong interest in finality that our judicial system favors. As such, relief under § 2255 is narrow and reserved for extraordinary circumstances. See: *United States v. Timmreck*, *441 U.S. 780, 784 (1979)*. The burden of proof rests with the defendant to demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." See: *Hill v. United States*, *368 U.S. 424, 428 (1962)*. Because of this high standard, a § 2255 filing cannot be used as a substitute for direct appeal, and errors that could have been raised on direct appeal are generally procedurally defaulted unless the petitioner can demonstrate both cause and actual prejudice. See: *Bousley v. United States*, *523 U.S. 614, 621 (1998)*; See Also: *United States v. Frady*, *456 U.S. 152, 167-68 (1982)*.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which is codified at 28 U.S.C. § 2255(f)[4], imposes a strict one-year statute of limitations on § 2255 motions, which begins to run from the date on which the judgment of conviction becomes final. See: _Clay v. United States_, _537 U.S. 522, 524-25 (2003)_. A conviction becomes final when a defendant does not appeal within the prescribed time, or if an appeal is taken, when the time for seeking certiorari from the United States Supreme Court expires. See: _Lara v. United States_, _919 F.3d 1146, 1150 (8th Cir. 2019) (citing Clay, 537 U.S. at 527)_. In this case, the Eighth Circuit dismissed Justus's direct appeal on October 30, 2024. See: _DE 262_. Although the mandate was issued on December 18, 2024, the judgment became final for purposes of 28 U.S.C. § 2255(f)(1) on January 28, 2025, which is the date on which the 90-day period for filing a petition for a writ of certiorari with the United States Supreme Court expired. Justus did not file a petition for certiorari. As this § 2255 motion is being filed on or about July 15, 2025, it is well within the one-year period of limitation prescribed by 28 U.S.C. § 2255(f)(1). Thus, Justus's motion is timely.

---

[4] A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
(1) the date on which the judgment of conviction becomes final, as affirmed by the Supreme Court or the court of appeals;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

## B.  Ineffective Assistance of Counsel Standard

The Sixth Amendment[5] guarantees criminal defendants the right to the effective assistance of counsel at all critical stages of a criminal proceeding. This right is fundamental to ensuring a fair trial because it is counsel who ensures that the accused is not left to face the "prosecutorial forces of organized society" alone. See: *Maine v. Moulton, 474 U.S. 159, 169 (1985);* See Also: *Strickland v. Washington, 466 U.S. 668, 685 (1984)* (*noting that "the right to counsel plays a crucial role in the adversarial system"*). When counsel's performance falls below an objective standard of reasonableness and prejudices the defendant, relief under § 2255 is warranted. See: *Strickland, 466 U.S. at 686.* In *Strickland,* the United States Supreme Court established a two-prong test for determining whether a criminal defendant was deprived of effective assistance of counsel:

> 1)Deficient Performance – The defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and 2) Prejudice – The defendant must show that but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. See: *Strickland, 466 U.S. at 687-88, 694.*

To satisfy the deficient performance prong, a defendant must demonstrate that counsel's conduct was not within the range of competence demanded of attorneys in criminal cases. See: *McMann v. Richardson, 397 U.S. 759, 771 (1970).* Judicial

---

[5] See: *U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.")*

scrutiny of counsel's performance must be highly deferential, and courts must apply a "strong presumption" that counsel's conduct fell within the wide range of reasonable professional assistance. See: Strickland, 466 U.S. at 689; See Also: _United States v. Nguyen_, 763 F.3d 1024, 1030 (8th Cir. 2014). However, this deference is not unlimited, and the presumption does not shield an attorney's fundamental failure to engage in the adversarial process. Under the prejudice prong, a defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See: _Strickland, 466 U.S. at 694. A "reasonable probability"_ is defined as "a probability sufficient to undermine confidence in the outcome." See: _Id._ The defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case. See: Id. at 693. Instead, the focus is on whether counsel's errors were so serious as to deprive the defendant of a fair proceeding whose result is reliable. Both prongs must be satisfied before a defendant can establish that they are eligible for relief. See: _Paulson v. Newton_, 760 F.3d 799, 803 (8th Cir. 2014).

### C. Justus Was Denied the Effective Assistance of Counsel Guaranteed by the Sixth Amendment, Rendering Her Guilty Plea Unknowing, Involuntary, and Unintelligent.

The Sixth Amendment's fundamental guarantee of effective assistance of counsel is not confined to the trial itself; it extends with equal force to every critical stage of a criminal proceeding, including the plea bargaining process. See: _Missouri v. Frye_, 566 U.S. 134, 143-44 (2012); See Also: _Lafler v. Cooper, 566 U.S. 156, 162 (2012) (emphasizing that the vast majority of criminal cases are resolved through_

*guilty pleas, making this stage paramount*). To establish ineffective assistance of counsel in the context of a guilty plea, Justus must satisfy the two-prong *Strickland* test, which requires a showing that but for counsel's deficient performance, the outcome of the proceeding would have been different in some measurable way. See: *Hill v. Lockhart*, *474 U.S. 52, 56-59 (1985)*. That said, Scoblic's performance was not merely deficient; it was a wholesale failure to provide the constitutionally required advice and representation necessary for Justus to enter a knowing, voluntary, and intelligent plea. As detailed below, Scoblic's multifaceted failures satisfy both prongs of the Strickland test, individually and cumulatively.

### 1. Scoblic's Coercion, Failure to Investigate Exculpatory Evidence, and Failure to Pursue Suppression Rendered Justus's Plea Unknowing and Involuntary.

For a guilty plea to withstand constitutional scrutiny, it must be a voluntary and intelligent act, meaning it is made with "sufficient awareness of the relevant circumstances and likely consequences." See: *Brady v. United States*, *397 U.S. 742, 748 (1970)*. The defendant must possess "an understanding of the law in relation to the facts." See: *Boykin v. Alabama*, *395 U.S. 238, 243 n.5 (1969)*. Scoblic's actions and profound omissions fundamentally undermined the voluntariness and intelligence of Justus's plea.

First, Scoblic's direct pressure on Justus constituted a form of coercion, transforming the plea decision from a reasoned choice into a perceived inevitability. Scoblic explicitly advised Justus that she "would not stand a chance in trial" and that taking the plea was her "only real option." See: *Justus Declaration, Exhibit "A"*. Such

unequivocal statements from counsel, particularly when lacking a comprehensive and objective assessment of the case, can vitiate the voluntariness of a plea. Indeed, this Circuit has long recognized that when counsel presents a plea as the only viable course of action, it can strip the defendant of the ability to make a truly free and informed decision, thus falling below the objective standard of reasonableness. See: *United States v. Day, 969 F.3d 878, 883 (8th Cir. 2020) (citing Hill, 474 U.S. at 56-57)*. The pressure exerted by Scoblic on Justus to accept a plea agreement and sign a Factual Basis Statement that she knew to be false directly contravened the duty to provide unbiased and competent counsel. This scenario aligns with situations where counsel's "gross mischaracterization of the likely sentencing consequences of a plea" constitutes deficient performance. See e.g.: *United States v. Cavitt, 550 F.3d 430, 441 (5th Cir. 2008) (holding that specific, affirmative misrepresentations about plea outcomes can be deficient performance)*. Scoblic's misrepresentations were not mere predictions; they were definitive statements that eliminated any perceived alternative for Justus, rendering her acceptance of the plea involuntary. See Also: *United States v. Rodriguez-Rios, 828 F.3d 1007, 1010-11 (8th Cir. 2016) (reiterating that the voluntariness of a plea is assessed under a totality of the circumstances, which includes counsel's advice)*.

Second, Scoblic failed to conduct an adequate pre-trial investigation into exculpatory evidence. The Sixth Amendment's guarantee of effective assistance includes a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." See: *Strickland, 466 U.S. at 691.*

This duty is especially critical when the client provides direct leads for investigation. Justus specifically informed Scoblic that text messages on her phone and an identified witness could disprove critical aspects of the Factual Basis Statement. Despite downloading the phone's contents, Scoblic summarily dismissed this potentially exculpatory evidence as "irrelevant," stating "it doesn't matter where you got the drugs from." See: *Justus Declaration, Exhibit "A"*. This abject failure to investigate or even assess the value of evidence that could directly contradict the prosecution's factual allegations constitutes deficient performance. See: <u>*Rompilla v. Beard*</u>, *545 U.S. 374, 387 (2005) (holding that counsel's failure to examine available information, even if voluminous, is deficient if it could have led to mitigating evidence)*. Scoblic's failure to diligently pursue these leads deprived Justus of crucial information necessary to evaluate the strength of the United States' case against her, thereby undermining the intelligence of her plea and compelling her toward a decision she believed was her only recourse. A reasonable investigation would have equipped Justus with a more accurate understanding of her potential defenses, which is fundamental to a knowing plea. See Also: <u>*Wiggins v. Smith*</u>, *539 U.S. 510, 521-22 (2003) (reaffirming counsel's duty to investigate and explore all avenues of defense)*.

Third, Scoblic failed to investigate or file a motion to suppress Justus's initial confession, despite being informed by Justus that she was under the influence of methamphetamine at the time of her arrest and could not have knowingly and voluntarily waived her Miranda rights. See: *Justus Declaration, Exhibit "A"*. Counsel has a professional obligation to explore the viability of suppressing incriminating

statements, particularly when a client asserts impairment at the time of a confession. Confessions obtained from individuals under the influence of drugs, where their will is overborne, can be deemed involuntary and inadmissible. See: *Mincey v. Arizona*, *437 U.S. 385, 398 (1978) (holding that statements made by a seriously wounded and incapacitated defendant were not the product of free and rational choice)*; See Also: *United States v. Turner, 27 F. Supp. 3d 726, 736 (E.D. Va. 2014) (granting suppression where defendant was under the influence of heroin, impairing his ability to knowingly and voluntarily waive Miranda rights)*. Most critically, the Eighth Circuit has explicitly recognized that the "influence of drugs or alcohol" is a key factor in assessing the voluntariness of a Miranda waiver. See: *United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995)*. Scoblic's failure to investigate this critical avenue of defense allowed potentially inadmissible evidence to remain as leverage against Justus, further pressuring her towards a plea. This failure to challenge the admissibility of a confession, the voluntariness of which was clearly in doubt, falls below an objective standard of reasonableness for counsel and denied Justus the opportunity to remove a significant piece of incriminating evidence from the government's case. See Also: *Kimmelman v. Morrison, 477 U.S. 365, 384 (1986) (holding that counsel's failure to file a suppression motion may constitute ineffective assistance)*.

The United States will undoubtedly highlight Justus's affirmative responses during the plea colloquy, where she affirmed that her plea was voluntary and that no other promises had been made. However, a defendant's solemn declarations in open

court are not an "absolute bar" to relief in a habeas proceeding. See: *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); See Also: *United States v. Young*, 531 F.3d 1030, 1038 (9th Cir. 2008) (a defendant's representations during a Rule 11 colloquy are "not invariably insurmountable"). Where a defendant presents specific, credible allegations of off-the-record misrepresentations and coercion—as Justus has done in her Declaration—an evidentiary hearing is required, as the existing record does not conclusively show that the petitioner is entitled to no relief. See: *United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) (an evidentiary hearing is required unless the motion and files "conclusively show" the movant is not entitled to relief). Justus's affirmative answers during the Rule 11 colloquy were not a knowing waiver of her rights, but rather the product of Scoblic's preceding pressure and deficient advice, leading Justus to believe she had no other viable course of action.

To establish the requisite prejudice under *Hill*, Justus must demonstrate a reasonable probability that, but for Scoblic's multi-pronged failures—counsel's coercive tactics, counsel's abandonment of the duty to investigate exculpatory evidence, and counsel's failure to pursue suppression of an involuntary confession—Justus would not have accepted the plea agreement as written and would have insisted on proceeding to trial. See: *Id.* The combined effect of these profound errors left Justus without a genuine understanding of her options or the true strength of the case against her, rendering her plea unknowing and involuntary.

### 2. Scoblic's Erroneous Advice Regarding Proffer Benefits and Rule 35 Motion Constituted Deficient Performance.

Scoblic's deficient performance is further highlighted by her misleading and incorrect advice concerning the proffer process and potential sentence reductions, which critically impacted Justus's decision to plead guilty. An attorney's role in advising a client about cooperation and its potential benefits is a crucial component of effective assistance, particularly given the often-complex interplay of plea agreements, sentencing guidelines, and government policies. Counsel has a professional obligation to provide a defendant with "accurate and reasonable advice about the consequences of accepting or rejecting a plea offer, including the impact of cooperation on sentencing exposure." See: *United States v. Rodriguez-Rios*, 828 F.3d 1007, 1010-11 (8th Cir. 2016). When counsel's advice is so inaccurate that it undermines a defendant's understanding of a plea, it falls below the constitutional minimum. See: *Lee v. United States*, 582 U.S. 357, 363 (2017) *(holding that inaccurate advice about a critical consequence of a plea, such as deportation, can establish deficient performance)*. To that end, Scoblic's conduct during the proffer and cooperation phase fell demonstrably below this objective standard of reasonableness in multiple respects.

To begin, Scoblic provided erroneous advice that affirmatively induced Justus to cooperate. Justus was assured that she would receive a 10-year sentence if her second proffer was accepted. See: *Justus Declaration, Exhibit "A"*. This was not a mere estimate or prediction of a possible outcome, but rather a definitive and unqualified statement of a guaranteed sentencing outcome, which never materialized. The distinction between an estimate and a guarantee is critical. While

a reasonable prediction of a sentence is permissible, a lawyer's "gross mischaracterization of the likely sentencing consequences of a plea" constitutes deficient performance. See: *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008). This principle holds true when counsel makes specific, affirmative misrepresentations about the terms of a plea or the benefits of cooperation, as opposed to merely providing a prediction or estimate. See Also: *United States v. Davis*, *788 F.3d 1224, 1228-29 (10th Cir. 2015) (counsel's performance is deficient if their advice regarding a plea offer is "grossly misleading")*. A specific promise of a particular sentence that is not contingent on court discretion or future events falls far outside the bounds of reasonable professional conduct. Scoblic's definitive assurance of a 10-year sentence directly influenced Justus's decision to cooperate and, ultimately, to plead guilty under a profound misapprehension of the true benefits she would receive, fundamentally undermining the voluntariness of her plea.

Further, Scoblic failed to protect Justus's rights during her first proffer session by permitting it to proceed while Justus was under the influence of methamphetamine. See: *Justus Declaration, Exhibit "A"*. As a direct consequence of this lapse, the United States later rejected this proffer, believing Justus was lying due to her impaired state. See: Id. There is no question that counsel has an absolute obligation to ensure that a client's statements are knowingly and voluntarily made, especially in critical contexts like proffer sessions, where the information provided can be used to gauge credibility, inform prosecutorial decisions, and potentially lead to further charges. The duty of counsel to ensure a client's competence and protect

their interests extends to all pre-trial proceedings. See: *Godinez v. Moran*, 509 U.S. 389, 401 (1993) (*discussing the requirement that a defendant be competent to assist counsel at all critical stages*). Allowing an impaired client to participate in a proffer without intervening, stopping the session, or advising against it, demonstrates a severe lapse in professional judgment that falls below an objective standard of reasonableness. This failure exposed Justus to negative perceptions from the United States and created an adverse record that later severely undermined her attempts to seek a sentence reduction. A competent attorney would have either sought a postponement of the proffer until Justus was sober or clearly documented her impaired state to mitigate the negative consequences of her statements and preserve her credibility.

Finally, despite Justus's subsequent successful second proffer and apparent provision of valuable information (as confirmed by the United States' acceptance of the proffer and their subsequent use of her information to prosecute "multiple people"), Scoblic later provided incorrect legal advice regarding her eligibility for a sentence reduction. Scoblic asserted that a Rule 35 motion for a sentence reduction based on substantial assistance was "not possible" because Justus had allegedly lied during her first, impaired proffer. See: *Justus Declaration, Exhibit "A"*. This advice was legally flawed and deprived Justus of the opportunity to seek a sentence reduction she may have otherwise earned. Federal Rule of Criminal Procedure 35 allows for a sentence reduction based on a defendant's "substantial assistance" to the government. While the ultimate filing of such a motion rests with the government,

counsel's duty is to competently advice on the eligibility for such a motion and to advocate for its filing where merited. See: *United States v. Gordon,* *156 F.3d 355, 359 (2d Cir. 1998) (counsel's failure to advise of eligibility for Rule 35 motion is deficient performance)*; See Also: *United States v. Johnson,* *451 F.3d 1239, 1243 (11th Cir. 2006) (counsel deficient for failing to request a substantial assistance motion when warranted).* An attorney has a "general professional obligation to ensure that the client has a full understanding of the choices confronting him." *Padilla v. Kentucky,* *559 U.S. 356, 364 (2010).* Scoblic's blanket assertion that a Rule 35 motion was "not possible" due to the first proffer, despite the successful second proffer and the government's stated use of information provided therein, was an abdication of her duty to explore all available avenues for sentencing relief. This misadvice directly foreclosed a potentially significant benefit that Justus had earned through her cooperation, especially given that the United States itself confirmed the information was "good" and helped prosecute others.

Scoblic's promise of a specific 10-year sentence directly impacted Justus's decision to plead guilty. The magnitude of the difference between the promised 10-year sentence and the actual 168-month (14-year) sentence is, by itself, sufficient to undermine confidence in the outcome. See: *Glover v. United States,* *531 U.S. 198, 203 (2001) (holding that "any amount of actual jail time has Sixth Amendment significance").* Furthermore, the erroneous advice regarding the Rule 35 motion deprived Justus of a potential avenue for a sentence reduction, directly prejudicing her by foreclosing a significant benefit of her cooperation. Had Scoblic provided

accurate advice regarding the proffer process, protected Justus's interests during both proffer sessions, and properly advised on the viability of a Rule 35 motion, there is a reasonable probability that Justus would have obtained a more favorable sentence, or at least would have been able to make an informed decision regarding her plea and potential cooperation, thereby altering the outcome of her case.

### 3. The Cumulative Effect of Scoblic's Errors Rendered Justus's Plea Unknowing, Involuntary, and Unintelligent.

Even if this Court were to find that any single error described in the preceding subsections was not, by itself, sufficient to warrant relief, the cumulative effect of Scoblic's deficient performance during the pre-trial and plea phase deprived Justus of her Sixth Amendment rights. The Eighth Circuit recognizes that in assessing prejudice under Strickland, courts must "consider the cumulative effect of all of counsel's alleged errors." See: _Paulson v. Newton_, _760 F.3d 799, 804 (8th Cir. 2014) (citing Strickland, 466 U.S. at 695)_. This principle acknowledges that while individual errors may not, in isolation, constitute ineffective assistance, a pattern of constitutionally significant failures, taken together, can completely undermine the integrity and fairness of the proceedings, particularly when those proceedings culminate in a guilty plea. See Also: _Moore v. Johnson_, _194 F.3d 586, 619 (5th Cir. 1999) (finding that the cumulative effect of several deficient acts may undermine confidence in the outcome)_; _Fisher v. Angelone_, _163 F.3d 835, 852 (4th Cir. 1998) (stating that the cumulative effect can reach a constitutional dimension)_.

In sum, a competently advised Justus would have been armed with a completely different set of facts and a trustworthy advocate upon which to base her decision. She

would have known: (1) that the plea was not her "only real option"; (2) that she had potentially viable defenses and suppression arguments that Scoblic failed to pursue; (3) that her cooperation could lead to a sentence reduction but was not "guaranteed" at a specific term; and (4) that her attorney was fully committed to her interests and exploring all avenues of relief, rather than acting with hostility and disinterest. The combined effect of Scoblic's pervasive errors and the deterioration of their professional relationship deprived Justus of all this critical information and objective counsel. There is a clear and reasonable probability that a defendant equipped with this knowledge, and guided by genuinely effective counsel, would have rejected the plea agreement as written and insisted on her right to a trial, or at the very least, would have entered a plea that was truly knowing and voluntary. See: _Hill_, _474 U.S. at 59_. Therefore, the cumulative prejudice from these pervasive errors requires that her guilty plea be vacated and further proceedings held.

### D. Justus Was Denied the Effective Assistance of Counsel Guaranteed by the Sixth Amendment During the Critical Sentencing Phase.

The Sixth Amendment's guarantee of effective counsel extends with full force to the sentencing phase of a criminal proceeding. See: _Glover v. United States_, _531 U.S. 198, 203 (2001)_. While a knowing and voluntary guilty plea typically waives all non-jurisdictional defects that occurred prior to the entry of the plea, that rule is fundamentally inapplicable to this claim for two independent reasons. First, the Plea Agreement itself expressly preserves this exact claim. The waiver provision in Justus's agreement states that she "reserves the right to appeal or seek collateral

review of a claim of ineffective assistance of counsel." See: *DE 204, at 8, ¶ P.* Therefore, by the plain text of the agreement the United States drafted, this claim survives. Second, and more fundamentally, the constitutional violation alleged here—ineffective assistance at sentencing—occurred after the entry of the guilty plea. The waiver doctrine articulated in *Tollett v. Henderson, 411 U.S. 258, 267 (1973),* is, by its very nature, retrospective; it applies only to antecedent constitutional violations that are subsumed by the plea. It cannot logically operate to waive a future, yet-to-occur deprivation of a constitutional right at a subsequent critical stage. Sentencing is unequivocally a critical stage of the proceedings requiring the effective assistance of counsel. See: *Mempa v. Rhay, 389 U.S. 128, 134 (1967).* Thus, Scoblic's errors at the July 29, 2024, sentencing hearing represent a separate and distinct constitutional harm that is not, and cannot be, waived by the May 21, 2024, guilty plea. To demonstrate ineffective assistance at sentencing, Justus must show that there is a reasonable probability that, but for counsel's deficient performance, her sentence would have been different. See: *United States v. Fields, 565 F.3d 290, 294 (5th Cir. 2009) (applying Strickland to sentencing, analogous to Eighth Circuit practice).* Scoblic's failure to investigate and advocate for significant mitigating evidence, combined with the profound breakdown in the attorney-client relationship, clearly meets this standard.

As part of her constitutional duty, Scoblic had an obligation to make reasonable investigations for mitigating evidence, particularly into Justus's background, health, and characteristics that might influence sentencing. See: *Wiggins v. Smith, 539 U.S.*

*510, 521-22 (2003) (emphasizing the importance of a thorough investigation into a defendant's background for mitigating evidence, including mental health history, and recognizing that "[counsel's] duty to investigate is not satisfied by a cursory inquiry").* This duty is not merely perfunctory; it requires counsel to explore and present information that could humanize the defendant, provide crucial context for their actions, and thereby potentially influence the sentencing court's discretion. Justus explicitly informed Scoblic about two prior inpatient stays at Avera Behavioral Health and ongoing treatment from a doctor and counselor at Sanford Medical, providing clear leads to readily available mental health records. See: *Justus Declaration, Exhibit "A"*. Despite this crucial information, which directly pertained to Justus's history and characteristics, Scoblic failed to obtain or present these records at sentencing. This constitutes deficient performance, as a reasonably competent attorney would have pursued these avenues to develop a comprehensive and compelling mitigation strategy. See: *Porter v. McCollum, 558 U.S. 30, 40 (2009) (finding deficient performance where counsel failed to investigate and present available mitigating evidence, including mental health records, noting that such evidence "might well have influenced the jury's appraisal" in a capital case, a principle equally applicable to non-capital sentencing).* Scoblic's omission left a critical void in the sentencing presentation, depriving the Court of important context necessary for a fully informed sentencing decision.

This pervasive deficiency was plainly prejudicial to Justus. The lack of a robust mental health presentation left Scoblic ill-prepared to counter the highly damaging

victim impact testimony provided by Justus's eldest daughter at the sentencing hearing. By every measure, she delivered a powerful and emotionally charged statement describing a lifetime of neglect and trauma. This testimony significantly undercut any mitigation argument based on family ties or rehabilitation, leaving the Court without any contextual framework for Justus's past behavior or a more nuanced understanding of her history. Scoblic was simply unprepared to adequately respond to the narrative presented by Liberty Justus, a situation that could have been mitigated by a thorough mental health investigation.

A thorough investigation into Justus's mental health history and substance addiction, and its proper presentation to the Court, could have provided critical context for her past conduct and explained many of the behaviors that led to her criminal involvement and the fractured relationship described by her daughter. Mental and emotional conditions, as well as substance abuse, are factors recognized as relevant to sentencing. See: U.S.S.G. § 5H1.3 (Mental and emotional conditions may be relevant in determining whether a departure from the guidelines is warranted); U.S.S.G. § 5H1.4 (*Drug dependence or alcohol abuse is not, in itself, a reason for a downward departure, but may be relevant in determining an appropriate sentence through other factors*). Specifically, a downward departure may be warranted where the defendant committed the offense while suffering from a significantly reduced mental capacity not resulting from voluntary drug use. See: *U.S.S.G. § 5K2.13.* While the sentencing guidelines provide a starting point, federal sentencing courts are required to consider a range of factors under 18 U.S.C. §

3553(a), including the "history and characteristics of the defendant," "the need for the sentence imposed...to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," and "the kinds of sentences available." Mental health challenges and addiction are a core component of a defendant's "history and characteristics," and a court may impose a sentence below the Guidelines where warranted by such factors. See: *United States v. Gall*, 552 U.S. 38, 52 (2007) *(reaffirming the importance of considering a defendant's history and characteristics under § 3553(a) and noting that "unusual circumstances" such as mental illness can justify a variance)*. The presentation of comprehensive mental health records, coupled with an explanation of how addiction impacts familial relationships and behavior, could have demonstrated to the Court that Justus's conduct was, in part, a manifestation of underlying mental health issues and a devastating addiction, rather than simply a reflection of malice or indifference. This would have provided a more compassionate and individualized picture of Justus, potentially leading to a sentence focused more on treatment and rehabilitation rather than solely on punishment.

By failing to investigate and present these mental health records and to contextualize them within the framework of addiction, Scoblic deprived Justus of a significant opportunity to present a compelling narrative that could have explained, if not excused, some of the behavior highlighted by the victim impact statement and the Presentence Report. Instead, Scoblic's argument for a downward variance was limited to Justus's minimal role and her criminal history score being on the *"cusp"* of

Category V. See: *DE 250, at 3-4.* While the Court ultimately sentenced Justus to 168 months, the bottom of the guideline range, it explicitly rejected the defense's *"growth and accountability"* argument. The only reason given for the bottom-of-the-range sentence was that Justus was *"just barely into Criminal History Category V."* See: *DE 250, at 6, 19.* This strongly suggests that a more comprehensive and well-supported mitigation argument, grounded in her documented mental health history and the impact of her addiction on her life and family, could have persuaded the Court to impose a sentence below the advisory guideline range. An error that causes a defendant to be sentenced under a higher Guideline range, or fails to secure a justifiable departure or variance, is a clear basis for finding prejudice. See: Glover, 531 U.S. at 203 *(any amount of additional jail time is constitutionally significant).* Because Scoblic's failure deprived Justus of a likely reduction and directly resulted in a sentence higher than she might have otherwise received, she was prejudiced. Accordingly, her sentence must be vacated and the case remanded for resentencing.

Furthermore, the breakdown in the attorney-client relationship directly contributed to Scoblic's deficient performance at sentencing. Prior to the sentencing hearing, Justus filed a motion to remove Scoblic as her counsel, explicitly informing the Court that she felt pressured and that Scoblic was not working in her best interest. See: *Justus Declaration, Exhibit "A".* Scoblic's subsequent hostile reaction further solidified a professional relationship characterized by conflict rather than counsel. See: Id. This severe breakdown in communication and trust is a strong indicator of deficient performance because it fundamentally impedes counsel's ability

to provide effective representation and a client's ability to rely on their attorney's advice, especially during the sensitive sentencing phase. See: _United States v. Burnett_, 762 F.3d 463, 467 (6th Cir. 2014) (recognizing that a severe breakdown in communication and trust can be evidence of deficient performance); See Also: _Childs v. United States_, 807 F. Supp. 2d 1177, 1184 (N.D. Ga. 2011) (a complete collapse of the attorney-client relationship renders counsel ineffective). The Eighth Circuit implicitly acknowledges the importance of this dynamic, emphasizing that "[t]he attorney-client relationship must be built on trust and effective communication." _United States v. Gomez_, 17 F.4th 809, 814 (8th Cir. 2021). An attorney acting with hostility or disinterest, particularly after a client has expressed a lack of trust, is unlikely to diligently pursue all mitigating factors or advocate passionately on their client's behalf. This adversarial dynamic left Justus without a fully engaged advocate at a moment of supreme importance.

### E. An Evidentiary Hearing is Required to Resolve the Factual Disputes Raised in Justus's § 2255 Motion.

For the reasons set forth above, an evidentiary hearing is required to resolve the material factual disputes central to Justus's constitutional claims of error. A § 2255 motion may be resolved without a hearing only if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." See: _28 U.S.C. § 2255(b)_. This statutory provision sets a high bar for summary dismissal. Where a movant's claims are plausible and supported by a "detailed and specific affidavit," a hearing is generally required. See: _Blackledge v. Allison_, 431 U.S. 63, 75-76 (1977). The Eighth Circuit has consistently affirmed this standard, holding that an

evidentiary hearing is necessary unless the movant's allegations are "conclusively refuted by the record," are "inherently incredible rather than merely improbable," or would not, even if true, entitle the movant to relief. See: *United States v. Sellner,* 773 F.3d 927, 930 (8th Cir. 2014); See Also: *United States v. Civitello,* 950 F.3d 1032, 1034 (8th Cir. 2020); *United States v. Oldham,* 783 F.2d 112, 114 (8th Cir. 1986) (holding that an evidentiary hearing should be granted unless the claim is "clearly frivolous").

Justus's allegations are neither incredible nor conclusively refuted by the existing record. To the contrary, her claims of ineffective assistance of counsel— encompassing Scoblic's coercion into accepting a plea and signing a false Factual Basis Statement, dismissal of exculpatory evidence, failure to suppress her impaired confession, affirmative misrepresentations about a guaranteed sentence, and incorrect legal advice that foreclosed a Rule 35 motion—all hinge on off-the-record conversations, confidential advice (and the lack thereof) from her former counsel, and her own subjective understanding of and reliance on these interactions. These are precisely the types of factual disputes that cannot be resolved on a paper record alone. See: *United States v. Rubbo,* 396 F.3d 1330, 1334 (11th Cir. 2005) (evidentiary hearing necessary where ineffective assistance claim turns on attorney's private advice to client).

Moreover, where a defendant presents specific, credible allegations of off-the-record misrepresentations or coercion—as Justus has done in her Declaration, *Exhibit "A"*—an evidentiary hearing is required to probe the "true nature" of the plea. See: *Blackledge,* 431 U.S. at 75. Justus's affirmative answers during the Rule 11

colloquy were not a knowing waiver of her rights but rather the product of Scoblic's preceding pressure and deficient advice, leading Justus to believe she had no other viable course of action. The purpose of an evidentiary hearing is to permit the court to consider facts outside of the existing record that are necessary to decide the claims. See: *Macho v. United States, 717 F.3d 302, 304 (2d Cir. 2013)*. That said, Justus's § 2255 Motion requires this Court to make critical credibility determinations about what Scoblic told her, what Scoblic failed to investigate, and how Justus relied on that advice. Such determinations can only be made after a hearing where the Court can observe the testimony of witnesses, including Justus herself and potentially Scoblic. As noted previously, Justus also avers that her cell phone, currently in the possession of Homeland Security, contains critical attorney-client communications, including both text messages and recorded conversations with Scoblic that directly support her claims of coercion and misadvice. These are distinct from the general exculpatory texts Scoblic previously dismissed, and their existence, being outside the current judicial record, further underscores the necessity of a hearing to fully develop the factual record and allow for a complete and fair adjudication of her claims.

Because the existing record does not conclusively show that Justus is entitled to no relief, an evidentiary hearing is necessary to ensure that her claims receive the fair adjudication they deserve, consistent with the fundamental principles of due process and the Sixth Amendment.

## IV. CONCLUSION

The cornerstone of American jurisprudence ensures that all criminal defendants be treated fairly, equally, and with the dignity the Constitution commands. Because of Scoblic's failures, Justus was denied the benefit of this cornerstone guarantee. As such, the interests of justice so demand that the previously imposed judgment be set aside and further proceedings held.

Respectfully Submitted,

*Amber Louise Justus*
**Amber Louise Justus**
Reg #: 49085-510
FCI Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that on this 31 day of July 2025, I did

forward a true and correct copy of the foregoing Motion via the United States Postal

Service, using postage pre-paid means, to the person listed below:

Mark Hodges, Esq.
Assistant United States Attorney
For the District of South Dakota
P.O. Box 2638
Sioux Falls, South Dakota

**ORIGINAL TO:**
Clerk of the United States District Court
For the District of South Dakota
400 S Phillips Ave
Sioux Falls, SD 57104

**WITNESS MY HAND THIS 31 DAY OF JULY 2025**

_____
Witness

*Amber Louise Justus*
Amber Louise Justus